ROANE, Judge.
This was a bill praying to be relieved against a verdict and judgrnent for the appellant, and to have a new trial granted, or that he should be decreed to pay the money due upon the bond, on which the suit at law was founded, in due proportions.
The case made by the record of Louisa Court, (which I understand to be introduced into the cause by consent) is, that of an action of debt upon a bond, and a verdict and judgment for the defendant upon an issue joined upon the plea of British debt. After the verdict, a motion was made for a new trial; but it was over-ruled in consequence of an equal division of the Court. The additional case made by the bill in Chancery is, that the verdict was obtained by the undue influence of the appellee. But, this is denied by the answer, and is not proved by the appellant. So, that it may be thrown entirely out of the case, which may be considered to be as naked as I have stated it.
On a demurrer to the jurisdiction of the Court of Chancery, and a plea of the above judgment in bar, the Court over-ruled the demurrer, and, at the hearing, decreed the present appellant to pay the money.
If the jurisdiction of the Court of Chancery was sustainable, it must be on the ground either of the judgment *478 of the County Court being erroneous in point of law, or of some extrinsic circumstance affecting the fairness of the trial, or at least some circumstance varying the case from that which was decided upon by the Court of Law.
As to the first, I consider that there is no question more completely and exclusively proper for the decision of a Court of Law, than the one whether British debts were recoverable or not, under the laws of the Commonwealth? And, if an erroneous judgment has been given by a subordinate Court upon the subject, it could properly be corrected by an appellate Court of Law, and by that only. In order to save time, I beg leave to refer, in support of this opinion, to the observations I used upon this point, in the case of Branch v. Burnley; and to remark, that upon mature reflection since, I have not seen cause to change my opinion upon the subject. Nor do I believe that there is a single decision of this Court, or of the Courts in England, which will justify the interference of a Court of Equity, in a case purely of a legal nature, merely on the' ground that the judgment of the Court of Law was erroneous. In Branch v. Burnley, I understood the doctrine to have been admitted by the Court; but the jurisdiction there was sustained on the ground, as a majority of the Court supposed, of the ease presented to the Chancery being, as relative to that before the Court of Law, 'a new case; on account of the circumstances exhibited in the suit in equity, which made no part of the case at law. In Picket v. Morris, I understood the jurisdiction was sustained on the ground of improper conduct in the Court of Law; and of one of the parties diverting the other from persevering in an application for a new'trial, (the proper channel for obtaining redress,') by giving him time to apply for an injunction; and then unconscientiously opposing him on the ground of jurisdiction. At least, these were the grounds on which my opinion was founded. In Ambler v. Wyld, I understand the relief to have been given on the ground of the trial not being fair and equal, and of some of the evidence having been rejected, without reason. 2 Wash. 41.
Therefore, without adverting to other cases, I .believe I am warranted in saying, that no decision has taken place, of the interference of a Court of Equity, in a question purely legal, and where the case was • precisely the same as that decided on by the Court of Law, on the ground that the decision of the Court of Law was erroneous.
*479 2dly. Are there any extrinsic circumstances in the case, such as existed in the cases just mentioned, tending to impeach the fairness of the verdict and judgment, as to the manner of obtaining them? None such are pretended.
And as I cannot, sitting as a Chancellor in the present case, (although my opinion may be that the County Court erred in point of law, in giving the judgment in question,) undertake so to decide for want of jurisdiction in the cause, so neither can I say, that in point of fact the jury were mistaken; especially as their opinion has been corroborated by that of a moiety of the Court refusing a new trial.
Nor can we say, that any act of unfairness existed in conducting the trial. We cannot make the appellee’s case better, than he himself has made it. *
Upon the whole, I do not see any ground for the interference of a Court of Equity. Otherwise, I do not discover that we can disclaim cognizance of any case whatever which the party may chuse to bring before the Chancellor, after it has been determined in a Court of Law.
I am, therefore, for reversing the decree, because the demurrer ought to have been allowed.
FLEMING, Judge.
Declined giving any opinion.
CARRINGTON, Judge.
If there had beeii any circumstances to vary the case in equity from what it was at law, I should have been willing to have afforded the plaintiff an opportunity of having his case re-considered, as was done in the cases of Ambler v. Wyld, Picket v. Morris, and Branch v. Burnley. But there are none. For, no new fact or other matter appears to give the Court of Chancery jurisdiction, and to be the foundation for relief in equity; since the influence is denied; and that was the only one alledged. It is, then, precisely the same case now, (without any addition,) that it was in the County Court: And, therefore, whether the judgment was right or wrong, it must prevail.
The consequence is, that the application to a Court of Equity cannot be maintained; and, therefore, I think the decree must be reversed, and the bill dismissed.
PENDLETON, President.
The prayer of the bill is, that the verdict and judgment should be set aside, and a *480 new trial awarded; or, that there should be a decree for principal and interest.
The Chancellor has chosen the latter alternative, in which I differ in opinion; since the matter being originally triable at law by a jury, it seems to me improper to change the mode of trial by a final decree; and that to award a new trial, is as far, as Courts of Equity have gone on these occasions.
The ground, upon which a Court of Equity interposes, is this:
New trials at law can only be granted by the Court who sit on the trial; since, none others can judge of the reasons on which they az-e founded; and because, when judgment is entered, that Court have no more power over the cause, and a Superior Court cannot award a new trial, unless the reasons appear in the record: at all tiznes difficult, and utterly impossible, where they arise from something discovered afterwards.
An unjust judgment must, therefore, stand against the pai’ties, or a -Court of Equity must intez-pose its aid, and supply the defect consequent upon legal forms. In this situation, no one can doubt which alternative ought to prevail.
The nature of our County Courts furnishes additional reasons in suppoi-t of this Chancery jurisdiction; which has, accordingly, beén sustained by the opinion of this Court, in several instances, where sufficient reasons have appeared for awarding the new trial.
Those reasons are many:
Accident or surprise, by which a party is deprived of a fair trial, tampering with a jury or witnesses, or other unfair practices;* the finding excessive damages, or against evidence, and many others: the precedents for which are numerous. Thus, for instance, in Ross v. Pynes, [Wythe’s R. 71,] a witness was sick and absent; but this circumstance was not known at the time of the trial: In Ambler v. Wyld, the Court at law refused to admit evidence, which appeared in equity to be material: In Cochran v. Street, [1 Wash. 79,] the vei’dict was given upon a mistake in the jury: and in Lee v. Foushee, the verdict was given late in the evening, and a motion for a new trial made next morning; which could not be heard, because the members of the Court wei’e changed; and, therefore, equity awai’ded a new trial.
*481 In the present case, none of the reasons appear. The plaintiffs suggest none other, than the influence of the defendants, and a general prejudice against British merchants. The defendant says he was not conscious of that influence, and that the trial Was fair.
A motion was made for a new trial, and the Court divided in opinion. No reasons appear in the record, nor in the proof. It only can be presumed, therefore, that the motion was founded on what was within the knowledge of the Court to decide; that is, that the verdict was against evidence.
This was matter of opinion; and although at law the consequence was unavoidable, that the negative must prevail; yet, since in fact it was equal, whether it was or was not against evidence, it is worthy of consideration, whether the consequent convenience or inconvenience ought not in equity to turn the scale.
On one side, is a creditor who may be barred by the mistake of the jury and part of the Court. On the other, the trial is to be at the costs of the plaintiff. If justice is with the defendant, he will, no doubt, prevail on the second trial; and this trouble will be the only inconvenience. On this ground, I suppose it is,that liberality in granting new trials is practised, in both Courts of Law and Equity. There is another circumstance which, perhaps, may deserve weight. It appears to me, that the issue tried was an immaterial one; that a repleader should have been entered instead of a final judgment; and that on an appeal, it would have been reversed.
But, whilst he has been prosecuting this suit, his time has elapsed, and the door for that remedy shut by the act of Assembly. The question, therefore, is, whether the Court will relieve him on account of his mistake in that respect? I have given the case the strongest view in which my mind could place it, from a wish to support the Chancery jurisdiction, and to avoid the possible risque of a creditor’s losing a just debt, from a mistake in legal proceedings.
But, the result of mature consideration is, an opinion that we cannot sustain the jurisdiction in this case, without fixing a dangerous precedent, wholly destructive of all distinction in the Common Law and Chancery jurisdiction; and that, whatever injury may arise to the party, it has proceeded from his own neglect: 1st. In taking issue upon, and not demurring to, the immaterial plea. 3d. In not *482 applying to a Superior Court of Law to correct the error, in entering judgment for the defendant, instead of awarding a repleader. 3d. In not stating on the record at law, or proving to the Court of Equity, any reasons on which his application for a new trial in either Court was founded.
I, therefore, concur with the two Judges in opinión, that the decree should be reversed, and the bill dismissed with costs.

[* Post, 574, and Trent v. Trents ex'x. Gilmer, 189.]

[* See Bateman v. Willoe, 1 Scho. & Lefr. 201, 205.]