Wednesday^ March 30. The Judges delivered their opinions.
Judge Tucker.
This cause having abated by the death of one of the parties, was revived by consent last term against the representatives of the party deceased, without naming them. The cause was now called for hearing, no person having been made defendant by name, in consequence of that order.
I was of opinion we ought not to proceed to a hearing of the cause, until the parties were before tlie Court by name.
Judge Roane cited Southal v. M'Keand, which appeared to me to be in favour of my idea.(b) He seemed to think the trial might proceed.
Judge Fleming concurring in opinion with me, another cause was called. But Mr. Hay afterwards suggested, *143 that there was a Mr. Thomas, who wuj cither executor or administra tor.
The cause was opened. Uut the Court seemed to agree that in future no cause should be considered as revived until some person should be named as a party, representing the party deceased.
The case appears to be this :
One W. C. Hill, in May, 1772 or 1773, being a deputy-sheriff, in the County of Cumberland., for James, the appellant’s intestate, who seems in his bill to admit that he was then high sheriff of that County, subscribed a paper headed thus, “ Sheriff of Cumberland, Jesse Thomas’s ticket list,” to which he subjoined a receipt as follows, “ Received tickets agreeable to the above list, which I promise to collect, or return according to law. W. C. Hill, D. Sheriff,” without saying for whom. On the 25th or 26th of July, 1785, Thomas obtained a judgment without opposition on motion against James, the high sheriff, for the amount of these tickets. After which James moved for judgment against Hill, his deputy, but his motion was overruled, because, as he alleges in his bill, it appeared to the Court that the receipt had been discharged by Hill himself, Thomas (though not a party) being present, and cross-examining the witnesses. Of this last circumstance there is no proof that Í have discovered in the record, James, in the year 1797, obtained an injunction to a judgment upon a writ of scire facias sued out by Thomas upon the first judgment, and upon the hearing the Chancellor dismissed his bill with costs ; upon which James appealed to this Court.
That the judgment against James was erroneous, and might have been reversed at law, appears sufficiently clear, to me, from this circumstance. The fee-bill(a) was a temporary act. It had been twice continued before James was high sheriff. It expired in May, 1774, was revived and continued in Oct. 1777 and Oct. 1778, when it again expired; and was again revived in Oct. 1782, and continued for two years, when it expired, and was again revived *144 in Oct. 1785.(a) The judgment obtained by Thomas was in the interval between the last mentioned expiration and the revival thereof; consequently the remedy by motion did not exist at that time, even if the judgment were right upon the merits.
A second reason why the judgment as against James was erroneous, and might have been reversed at law, appears to me to be this. The sheriff is not bound by law to collect the fees which may be due to his predecessor in the same County; the law obliges him to collect the fees due to surveyors, clerks, and to the sheriffs of other Counties, but makes no such provision in favour of preceding sheriffs of the same County, who were authorised by the 12th section of the act to collect and distrain for their oxvn fees, as well as for those due to sheriffs of other Counties. Of course James, as high sheriff, not being bound in duty to collect the fees due to his predecessor, in virtue of his office as sheriff, the undertaking of his deputy to collect them was not an official act, but a mere personal undertaking, for which James was in no manner whatsoever liable. The judgment consequently was erroneous upon this ground also. But, instead of appealing from drat judgment to a Court of law, or applying for a -writ of error, or of supersedeas to reverse that judgment, he has obtained an injunction from the Chancellor, I presume, upon the usual terms of releasing errors. This brings the case precisely to that of Branch v. Burnley,(b) and the question is, whether the appellant, under these circumstances, is entitled to the relief that is sought.
The only grounds upon which one man can be bound to answer for the undertaking and default of another, is where he has expressly bound himself to do so, or where the law, by reason of some official connexion or other relationship between them, so far identifies them together, as to consider the act of the inferior as the act of the superior. This is the case with sheriffs and their deputies in every instance where the law imposes a duty upon the sheriff virtute of *145 fici-i; but, where the law does not impose a duty, in that manner, the sheriff and his deputy are distinct persons, and the high sheriff is no more responsible for the acts or undertakings of his deputy, than for those of any other person whatsoever. I have already stated, that this was a mere personal undertaking of Hill’s, and not an official one, by which his superior was bound.
The judgment is therefore against equity as well as against law. This, I apprehend, distinguishes it very materially from the case presented by the bill of John Whiting v. Maupin,(a) where Whiting wished to avail himself of the circumstance of his not having signed the replevy bond, upon which, as I understand the case, judgment had been obtained against him: the Court said, if he was not bound at law, his not having signed the bond was a legal defence, of which he should have availed himself upon a motion for a judgment on the bond, and not have resorted for relief, on that ground, to a Court of Equity, where the case is to be decided upon its real justice, and not on the omission of strict legal ceremonies. In that case the plaintiff had not indeed signed the bond; but, on its being shewn to him, with his name thereto, said he supposed he must be his father’s security, and acknowledged it. This Court said, that, upon that view of the case, Whiting had no pretence of equity, and dissolved the injunction. It is also, I think distinguishable from the case of Terrell v. Dick,(b) in this, that no defence was made; whereas in that case the question of law was fully argued at the trial, and no steps were taken to carry the cause before an appellate Court of Law. In this case, the complainant seems to be wholly ignorant, that he was neither bound at law, nor in equity, for the acts of Hill in this particular instance. Pie supposed himself bound thereby, and made no defence at law; nor does he even suggest this in his bill, as a ground for relief in equity. Undér these circumstances, I strongly incline to think, .that this case differs materially from any of those in which relief has been refused in equity. But, as a majority of *146 tne Court is of a different opinion, and as I concur perfectly in the grounds upon which former decisions upon this question have been made, I shall acquiesce in their opinion without further observations.
Judge Roane.
Whether James, the high sheriff, was liable to the judgment of the appellee for the fees in question; or liable in that particular form of action, is a question completely and emphatically legal. If determined erroneously, that decision must still bind, until duly reversed by a Court of Law; and a Court of Equity cannot relieve against the judgment on the mere ground of this error. It is a question which is not cognisable by that tribunal. It cannot do this, however palpabld it may conceive the error to be; for if its jurisdiction is admitted in plain cases, it will go on to adjudge what cases are plain, and the function of the appellate Court of Law will be entirely superseded. It is believed, that no difference exists in this respect between a judgment suffered by default, and one obtained upon a verdict.
The doctrine just mentioned was fully settled by this Court, upon argument, and a full consideration of all the preceding cases, in the case of Terrell v. Dick.(a) In that case the jurisdiction of the Chancery was disclaimed under strong circumstances, rather than (in the language of the President) “ to fix a precedent wholly destructive of all dis- “ tinction in the common law and Chancery jurisdiction.”
Considering the natural and progressive tendency of the jurisdiction of the Chancery to encroach upon that of the common law Courts, and thus not only to lose the advantages of Jury trial and viva voce examination, but also to give a man the benefit of his own testimony, that jurisdiction, however salutary and valuable, should not be extended to the overthrow of the jurisdiction of the Courts of common law j nor .ought the land-marks established by this Court, in relation to this subject, lightly to be departed from.
Upon this ground of error, then, the appellant is not entitled to relief; but, indeed, he has not himself taken this *147 ground in his bill, but has merely charged therein, that the : money recovered against him had been previously paid. Í may. here ask why this defence was not used at lazo; it being a clear principle, that discounts shall not (without assigning some reason) be frst set up in equity ? The case of the appellant is therefore incomplete in this respect, But, waiving that objection; the answer of the defendant has expressly denied the payment, and that answer is powerfully supported by the testimony of Theodorick Scruggs. Scruggs states, that Hill, after the time mentioned 1 >y Flippen and Carrington, admitted that he had not paid the money due for the tickets, but said that James “had taken and col- “ lected the tickets, and ought to pay for them.” If this be the fact, certainly the judgment cannot be said to be inequitable. This answer and deposition, therefore, entirely outweigh the testimony of Flippen and Carrington, (upon which the County Court probably went in the case of the motion against Hill,) but that testimony taken singly, is at least, equivocal and inconclusive, whereas that of the answer and of Scruggs is positive and affirmative. This latter testimony must therefore prevail; and, on the merits, the judgment of the appellee ought not to he enjoined. The appellee ought not to be at all affected by the decision ip the County Court, in the case of James v. Hill, as he was no party to that controversy; although (happening to be present,) he may have interfered in cross-examining the witnesses. He is not be estopped by that decision, unless, like other parties, he had had a full, fair, and previous opportunity to meet the question in controversy.
As to the lapse of time prior to 1735, it is accounted for by the existence of paper money, and the revolutionary war. The delay, afterwards, is ascribed by the appellee to the existence of the appeal, to his infirmities, and the death of the complainant. As to these, we have no certain data, (which, if they would help his case, ought to have been furnished by the appellant,) from which to infer, that the delay evinces that the present claim is tmconscionablts *148 The same remark applies to the insinuation that the appellee had laid by until the death of Hill, with the view of taking advantage of that circumstance; the record being wholly silent as to the time of his death.
I am therefore of opinion, that the decree be affirmed.
Judge Fleming.
The case of Terrell v. Dick, in this Court,(a) seems to have settled the principle, that a Court of Equity will not interfere in a case purely of a legal nature, on the ground that the judgment at law was erroneous, where neither fraud nor surprise are suggested, nor any adventitious circumstance had arisen. In the case before us, James, the intestate of the appellant, though he had due notice of the intended motion of Thomas, failed to appear and avail. himself of the law that seemed then to be in his favour, and, without any defence, suffered a judgment to pass against him, contenting himself, as he states in his bill, that he-would have recourse against Hill, his under-sheriff, not knowing but he was really in arpear to Thomas, on account, of the receipt he had previously given him for sheriff’s fees, But his motion against Hill and his securities, made pi a subsequent day, was overruled, the Court stating, that the receipt aforesaid was discharged by the said Hill. And whatever injury James, the appellant’s intestate, may have sustained, it seems to have arisen from his own inattention and negligence; and. was this Court, as a Court of Equity, to interfere, it might tend to fix a dangerous precedent, destructive of a proper distinction between the common law and Chancery jurisdiction. Upon this ground, without considering the merits of the case, I am of opinion, that the decree ought to be affirmed.
By the whole Court, (absent Judge Lyons,) the decree of the Superior Court of Chanceiy affirmed.

 Vide 1 Wash. 339.

 L. V. 1745, c. 1.

 L. V. 1745. c. 38.

 1 Call, 147.

 See Maupin v.Whiting, 1 Call, 224.

 1 Call, 546.

 1 Call, 546.

 1 Call, 546.