By the Chancellor.
If the law affords an adequate remedy in this case, the application to this Court is improper; but if the law does not, this is, then, the proper Court.
The counsel differed upon this subject. But I will not indulge a belief, that the geographical situation of counsel can have any influence upon their judgments, with respect to the jurisdiction of either Court; but, be this as it may, *471 the Court must act upon principie ; and here let me premise, that a Court of Chancery should, to be really useful to the people, confine itself to those cases where a party is without remedy, or relief, at law, unless, from circumstances, (which, if true, could not be controlled,) he was tmáble to make his defence at law: because it is obvious to my mind, and must be to all.those who know any thing about the mode of proof, and of trial, in the two Courts, that the .difference is greatly in favour of a Common law trial: for there, justice can scarcely ever fail: because, the parties, the witnesses, the Jury, and a disinterested Court are, or mat be, looking at each other, at the same time; and the smallest deviation in a witness, can be detected, in a cross-examination upon the spot: nay, to see a witness, is often of inore importance, than to hear him; for his looks sometimes conduct our senses to a conclusion, which his word? would not: but, in this Court, the parties and their witnesses are only known upon paper; and injustice, more or less, on that account, must be in almost every sentence.
When the Court of Chancery first took its rise, it wac upon those principles: but the power of the Court resting generally in the hands of an individual, the Court has gradually been encroaching upon the common law Courts, until, it would really seem, that it now claims jurisdiction, in common, with those Courts, in all cases whatsoever ; such is the effect of power in the hands of an individual. But the true course for a Chancellor is never to interpose, if the matter can be adjusted at law : and the best interest of the people requires, that this rule should be adhered to: and more especially in a republic like ours, where, if the science of free government is not better understood, in theory, than in other countries, it is in practice ; and of this, we proudly boast: and the fathers of their country have recorded rn the sacred declaration of our rights, “that, in controversies respecting property, and in suits between man and man, the ancient trial by fury, is preferable to any other, and ought to be held sacred.” All must agree, that *472 it is one of the first duties of the magistrate to do his part in the preservation of this grand feature, in our sublime CONSTITUTION. And, therefore, as we all know, that . our County Courts, generally speaking, are composed of the most respectable citizens among us, and our Superior Courts of Law filled with gentlemen not less distinguished for their morals, than for their talents; that, if parties will attend to their rights, in those Courts', and should not, from any material circumstance, be able to obtain justice, on the first trial, another may be had, before the same tribunal; there must, after this, be but little pretence for coming into equity ; but, if in those Courts, the parties will not attend to their rights, they may by their own negligence, close the door of equity against themselves for ever : and so I understand the Court of Appeals, in the case of Terrell against Dick, 1 Call, 546. and in Turpin against Thomas, 2 Hen. Munf. 139.
• These cases deserve attention : they appear to me, to reinstate, upon correct principles, the original line between the Courts of Common Law and Chancery, which, if not blotted out, was much impaired by the decision in Barret v. Floyd, in the year 1790, 3 Call, 531. and all that class of cases which followed upon like principles, but which I now consider as overruled by the principles laid down in the cases before-cited, of Terrell v. Dick, and Turpin v. Thomas, which I shall take for my guide.
■ It may be a great self-deniai for some men to refuse themselves the exercise of a power, of which they have so many examples; but my mind is differently organized : and my impressions are, that every public character should pürsue the dictates of his own deliberate judgment, adhering to the constitution, and conforming to the laws., and acting for the best interest of the country, at ail times, without being under the influence of any personal consideration whatsoever. With these preliminary remarks, I shall proceed to examine the plaintiff’s case.
At law he recovered all the negroes in controversy that *473 Were then in being, and after going through two appellate Courts, with like success, he issued his execution, which was thwarted by the defendants; but this should not subject them to a suit in this Court s because it was, and still is, perfectly in the power of the plaintiff to obtain a due execution of the common law process, necessary to enforce his judgment, widiout the aid of this Court: for there can be no doubt, but that the Court of Law would, as it still will, see to the due execution of its own process, and riot suL fer it to be abused. The plaintiff then might have asked leave, as he still may, to quash the writ of distringas only; and he might, as he still may, either by a rule of Court, or by a scire facias at law, obtain an order for the identical negroes in the hands of the purchasers, without going through all the tedious forms of the law again. And, as to their hires since the verdict at law, in the County Court, I shall only say, that if the plaintiff is entitled to any thing on that account, an action at law is the proper remedy s and so with respect to the negro born since the judgment.
I shall not say any thing as to the damages and costs, as the amount thereof is acknowledged by the plaintiff to have been received.
It is also unnecessary to say how far, to avoid circuity of action at law, a party might be justified in applying here since it would have been much cheaper for these parties to have had two suits at law in their own neighbourhood, than one here; upon the whole, it appears to me that the plaintiff’s remedy at law was too free from any difficulty to have made it necessary for him to come into equity.
But, one word as to the mode of excepting to the jurisdiction of the Court: it should have been by demurrer, and not by plea.
The distinction is this j that where the objection to the jurisdiction of the Court appears on the face of the bill itself, the proper mode of defence is by demurrer; but where it does not, the objection should be made by plea but this is mere form, and makes no difference, fines th? *474 objection might have been taken at the bar; as it may in all cases where it would be proper by demurrer : and so it has been ruled on several occasions in this Court since mv time, “ _ and lately confirmed in the Court of Appeals, in the case of Pollard v. Patterson's Administrators, 3 Hen. Mumf. 67.
Bill dismissed.