PENDLETON* President.
The Court has little doubt upon the merits; for, they think the payment to the attorney was good; but, the complainant seems to have mistaken his remedy, for the whole matter was stated on the record, so that he might have had relief by appeal or supersedeas. The question then is, whether the release of errors which was imposed upon him by the Chancellor, but which prevented him from resorting to a writ of supersedeas afterwards, has altered the case ? On this point, we wish to hear counsel.
*129 The authority of an attorney at law to receive the money, expires at the end of the year and day, unless he receives new directions.
Randolph, contra.
The usage of the country is in favor of Branch; but, independent of that, the replevy bond might have been executed by motion, and it was the attorney’s business to proceed. At all events, the act of Assembly which regulates the computation of time, reduces the period within the year and day.
The functions of Briggs, created a trust which gave the Court of Chancery jurisdiction, and would have sustained a bill of interpleader. Besides, that Court having compelled the plaintiff to give the release of errors, ought not to refuse to entertain jurisdiction of the cause after-wards. The mistake of the Court ought not to prejudice the right.

Wickham.

There was no trust in this ease; and, if a bill of interpleader lay, yet none is filed. The Chancellor, on dismissing the bill, might have injoined the respondent from Setting up the release. And, although the time may have expired, yet that perhaps would be no objection under the circumstances of the case.
ROANE, Judge.
The questions I shall consider in this cause, are 1. Whether the ease exhibited by the appellant in his bill is, in itself, proper for the jurisdiction and relief of a Court of Equity ? And, if not, then 2. Whether it ' can become so from the circumstance of the opinion of this Court, that the District Court erred in point of law, to the -injury of the appellant, in their judgment in 1791; and, that he is now barred from.correcting that judgment on the common law side of this Court, by reason of his releasing errors on obtaining the injunction, and by the lapse of the time limited by law for obtaining appeals, writs of error, and supersedeas ?
Upon the first question, I hold it to be a clearly established principle, that a judgment of a Court of Common Law, though erroneous, given on a legal question, shall never be corrected or disturbed in equity, upon grounds which were proper for the consideration of the Common Law Courts, and which, therefore, we must suppose such *130 Coui’t to have decided upon; unless the applicant to the Court of Equity, can shew some particular circumstances to have taken place, operating as an impediment to his availing himself of those grounds upon the trial at law.
A contrary construction would erect a co-equal Court, exercising a different line of jurisdiction into an Appellate Court, destroy those barriers between the respective jurisdictions which have been wisely and anxiously established and kept up, both in this country and in England. Such a construction would admit a party to come into a Court of Equity, although remediable by a Court of Law, when he alledges as a ground for coming into equity, and ought truly to alledge it, it is presumed, at least, where there is not a concurrence of jurisdiction, that he is only and properly relievable in equity.
The question decided upon in the present instance, by the judgment of the District Court, reversing that of the County Court, is a question of a nature purely legal. It is, as simplified by the bill of exceptions, whether the receipt of an attorney at law, not specially authorised to receive payment, by his client, given a considerable time after the judgment was obtained, operates as a discharge of the debt?
That Court in considering this question ought, and we must presume, did take into its consideration the general custom spoken of in the appellant’s bill, if that custom constitutes a part of the law of the land, and their decision was against the validity of the custom as a part of the law of the land. If this judgment was in this respect erroneous, it could be corrected by an Appellate Court of Law only. Till then, the decision should be taken to be right.
But, supposing this custom be merely an unauthorised’ and illegal custom, the plaintiff in equity cannot avail himself of having conformed thereto, without alledging and proving the particular assent of the appellees to be bound thereby. This particular assent is not alledged in the present bill; and, indeed, if in fact it had been given, testimony thereof was proper in the trial at law, and should not now be set up in equity, unless discovered since that trial, or then could not be urged on account of some particular impediment.
Nor should the allegation of the appellant, that he had no notice of the appeal till after the determination, be permitted to sustain him in equity: for, then, every cause, of whatever nature, would be liable to be carried from a Court *131 of Law into a Court of Equity. But, in fact, the determination of this appeal was known to the appellant in due time to have enabled him to review the decision, in the ordinary way, before an Appellate Court of Law.
These are the grounds on which the appellant has brought himself into a Court of Equity: for, I suppose, little stress will be laid on the circumstance which is alledged, but not proved, of Briggs’ threatening to sue out an execution against him; grounds, which were proper for the consideration of a Court of Law, and can confer no jurisdiction on a Court of Equity, without erecting that Court into an Appellate Court of common law jurisdiction.
I come, now, to the second question, viz: Whether, as the bill of the appellant, in itself, has not presented a case which is proper for the cognizance of a Court of Equity, the base will be considered so, from any opinion this Court may entertain, that the judgment of the District Court is erroneous in point of law; but, yet, cannot be corrected by a Court of Law in favor of the appellant, by reason of his release of errors on obtaining his injunction, and the lapse of the term limited, by law, for obtaining appeals, writs of error, and supersedeas?
Being informed that this Court has decided, heretofore,* the question decided by the District Court, differently from what that Court has done, we cannot reasonably doubt but that that judgment is, in point of law, erroneous: but this Court, sitting as a Court of Equity, ought not, by a side wind, to undertake to say that such judgment was erroneous; or, in effect, to reverse a common law judgment, although, from principles before established in other cases, they would probably reverse the judgment, if regularly-brought before them, on the common law side of the Court.
Over and above the danger of an Appellate Court’s giving its sanction to any question or resolution not directly and judiciously considered, this doctrine pre-supposes the Court to understand the merits, in point of law, of a judgment which is merely collateral, and which it has not judicially considered: And, however short and plain the question of error in this particular case may be, we should be cautious of acting upon a principle and establishing a precedent, which would impose on this Court, in its appellate character as a Court of Equity, the task of reviewing a *132 common law judgment not appealed from, and only collaterally brought before it.
If, then, this Court cannot, now, with propriety, say the judgment of the District Court is erroneous, we cannot say that the appellant has been injured by barring himself from reviewing that judgment as at common law; for, whether he is injured, or not, depends upon the question, whether the judgment of the District Court be erroneous, or not: a question, which this Court ought not to decide, for reasons already assigned.
Far be it from me to impeach the power of a Court of Equity to give relief against a judgment at law. My position, however, is, that when such relief is granted, it is on the ground of some unconscientious conduct on the part of the party enforcing that judgment; or on the ground of some vice in the judgment itself, arising from circumstances other than an erroneous opinion, in point of law, of the common law Court in that particular case. In the present case, this Court cannot say that it was unconscientious and oppressive in the appellee to carry into effect a judgment of the District Court, obtained without any circumstance of unfairness.
But, if that judgment might now be properly considered as erroneous, and originally liable to reversal, as the appellant might, so he has waived his right to a review both expressly and impliedly; expressly, by agreeing to release errors, and impliedly, by suffering that time to elapse, within which he ought to have applied for such review under the terms of the act of Assembly.
There is no hardship in confining a party to one jurisdiction. It is a general principle of equity, that a man shall not be permitted to sue, both in law and equity, for the same thing;* this principle has given rise to the practice of requiring a release of errors at law on obtaining injunctions to judgments.† It is bottomed on a principle, that a man may waive any particular right or benefit, and on the evident justice of preventing a party from being vexed and harrassed in various Courts for the same cause, but that he shall stand or fall by the election he has made.
It will readily be observed, that in deciding this case, I go by general principles. Possibly, this particular appellant may be injured by the situation into which he has *133 brought himself, by an injudicious course of proceeding. This, however, is of his own chusing, and the probable hardship of his own creating.
And it is better, even in the eye of a Court of Equity, that an individual should suffer an injury, arising from his own acts and conduct, than that that Court should, with the view of relieving him, usurp a jurisdiction prohibited by law, and break down the partitions wisely established in our judiciary system.
For these reasons, I am of opinion, that the Chancellor had no jurisdiction m the cause; and ought to have given judgment for the appellee on the demurrer.
FLEMING, Judge.
The first question is, whether the complainant has shewn a case proper for the relief of a Court of Equity, against the judgment of the District Court ?
And I think he has. It was the custom of the country, and is so proved by the testimony in the' cause, for the attorney to receive the money on behalf of his client from the defendant. It frequently happened that the creditor would refuse payment himself, and referred- the debtor back to the attorney to settle the business. Indeed, so far was this principle carried, that the merchants would not employ an attorney who refused to do so.
It is said, that the attorney’s authority ceased after the year and day. But, such an answer would have astonished the client to whom it was made. Briggs’ power continued till revoked, and his duty was to move for judgment and award of execution on the bond. The Court has already determined, that payment to the attorney was good; and the practice is convenient to both debtor and creditor. So, that there is no doubt but that the judgment of the District Court was erroneous; and, it is equally clear that Ozborne did nothing unjust; for, the payment was made out of monies arising from the collection of specie debts.
It would, therefore, be against all conscience, that he should be bound by a judgment manifestly erroneous:, which brings me to the next question, whether the Court of Chancery had jurisdiction ?
The payment to Briggs was both a legal and an equitable discharge, and upon its being made, the bond should have been given up. Now, the rule is, that equity considers that as done, which ought to have been done; and, therefore, it is the same thing there, as if it had actually been given up.
*134 The bond, however, remained nine years in the office, being proceeded on; and, the County Court after-wards refused to give judgment on it, but the District Court erroneously reversed this opinion of the County Court, and entered judgment for the plaintiff in the motion. Of which the complainant received no information, until some time afterwards, when it was too late to appeal. It would, therefore, be extremely unreasonable, that he should be precluded from an opportunity of correcting the error.
But, then it is said, that he should have applied for a writ of supersedeas to the judgment of the District Court. It is true, he might have done so; but, I think, he was not under any obligation to do it, and that he was at liberty to chuse either mode of redress. 1. Because, he was surprised by the judgment at law. 2. Because, Briggs was a trustee, and equity had jurisdiction of the trust. * 3. Because, there was new evidence, which did not appear in the judgment at law.
It was said, that he who asks equity, should do it. This I admit. But, here there was nothing immoral in the payment; and, although, the appellees may have sustained some injury by it, yet many of our own citizens have borne the like. It was one of those consequnces, which resulted from the nature of things at that time; hard enough, either way, but which could neither be foreseen nor prevented. Upon the whole, I think the decree is erroneous, and ought to be reversed.
CARRINGTON, Judge.
I admit, that the powers of a Court of Equity should be kept separate and distinct from those of a Court of Common Law; but, I am perfectly satisfied, that under the particular circumstances of this case, the Court of Chancery might very properly have interfered, in order to prevent the effects of an erroneous judgment. Consequently, as I think the complainant was clearly entitled to relief upon the merits of his case, without entering into a minute examination of the technical reasons, which have been urged on either side of the question, I feel no difficulty in declaring that I am of opinion, that the decree of the Court of Chancery is erroneous, and should be reversed; and, that a perpetual injunction ought to be awarded to the judgment of the District Court.
*135 PENDLETON, President.
I have not for a moment doubted, but that the plaintiff was conscientiously entitled to relief against a judgment at law, which bound him to pay, over again, a debt which he had fairly and honestly paid nineteen years past. When I say fairly and honestly, I do not lose sight of Mr. Wichhamds objection, that the payment was in depreciated paper, by which the creditor sustained a loss. It does, not appear, that Osborne was personally concerned in the speculations which produced the depreciation, or in passing the law, which made the paper a tender. As a citizen, he was bound to obey the law, and no moral duty inquired him not to do so to his disadvantage, and to waive the beneficial parts, to the ruin of his family. He did not carry commodities to market to sell at five times the value, for paper to pay this debt, but he collects debts of equal value, with that he owed, to pay it, in the ordinary practice of his neighborhood, and under an idea that there was no difference in value between specie and paper. This I call a fair and honest payment.
Having provided the money, what was he next to do ? His creditors had left the country, and he could not find them to pay; a circumstance, which in M'Call v. Turner, [ante. p. 133,] we decided to be a good reason for stopping the interest at law. He applied to the attorney, who prosecuted the suit, and who, whatever might be the extent of his authority, it is agreed might have moved for an execution on the replevy bond, and issued it; in which case, a payment to the Sheriff would have discharged Osborne; and, is it not equitable at least, that a payment made to the attorney (who had the control over the bond,) to avoid that execution, should have the same effect ? The plaintiff thus shewing a fair and proper case for relief in equity, what is the objection to its being afforded him? Not, that the Court of Equity is not competent to give it, in the proper exercise of its inherent powers, but that his remedy was at law; And this leads us to enquire, what was his remedy at law, when he applied to the Chancery.
The judgment of the District Court barred him at law; but it is said, he might have sued out a supersedeas from this Court, at law, and possibly, indeed probably, have reversed the judgment; as, this Court have since decided in other cases, that a payment to the attorney, is good at law. But, was he bound to take that step at certain expense and *136 doubtful success, before he could apply to Chancery?*’' I se^ n0 reason f°r it? and I believe a precedent cannot be shewn, where the Chancery in England refused relief in a proper case, against a judgment in the Court of King’s Bench or. Common Pleas, to which our District Courts assimilate in this respect, because the party had not prosecuted a writ of error in the House of Lords, their dernier resort of‘ justice. All the Chancellor will do on the occasion, is to compel the party on his first application, to abandon his pursuit at law, and abide by his equitable claim: and this the Chancellor did in this case, by imposing the release of errors.
But, it is said, the Court of Chancery had not original jurisdiction, and that it could not be - given by the act of Branch, or assumption of the Court. The two last members of the proposition are true; the first requires consideration.
If, by the original jurisdiction be meant, to refer to the outset of the business in 1774, it is true, that the Court of Chancery had nothing to do with the subject until the judgment in 1791, nor had the plaintiff till that period any occasion to apply to that Court, having so far successfully defended himself at law. But, if by original, be meant a competent jurisdiction commencing to relieve against an unjust and oppressive judgment obtained by an adherence to the rigid principles of law, the objection is pointed against the general jurisdiction of the Court in granting injunctions, and the counsel will do well to consider in his state of inconveniences, whether it would be of public utility to deprive the Court of that jurisdiction, † The reasoning of Lord Mansfield, in favor of new trials, from the many accidents which may prevent the attainment of justice in trials at law, apply forcibly for the interference of equity, where that cannot be had at law, and have been so applied in many instances in this Court, as in the cases of Ross v. Pynes, Wythe’s R. 71. and Cochrane v. Street, [1 Wash. 79.] But, it is said, all the equitable circumstances are involved in the question at law, and in that view, it is an appeal to this Qourt, to correct the er *137 roneous judgment at law, which-would be undoubtedly improper. This is important in itself, and rendered more so by the sanction it has received froo, the opinion of one of the Judges of this Court.
The proper way to decide the question, is, to take a comparative view of the cases as they respectively appear in each Court. At law, the bill of exceptions states the case, that the receipt is no acquittance; and, for any thing I know; the Court of Law might have decided, that this bond, under seal, could not have been discharged by the receipt without seal; it being one of their old rules, that a specialty cannot be discharged, but by something of as high a nature. A Court of Equity, however, regarding substance and not form, will give it eífect as a discharge.*
But, on the essential question of the power of the attorney at law to receive the money: At law, it is put on the general power of attornies at law, to receive their client’s money without a special authority. Not a word of the custom here, so that the question depended on the common law, and on that ground was rightly decided against the power. But, in equity, the custom is set forth; and though, as stated in the demurrer, it was illegal, yet, since the practice had impressed on the minds of the people, an idea of its legality, and under 'that idea the payment was made, he ought in this Court to have the benefit of it, and so it is stated in his bill.†
In answer to this, it is said, 'that the custom of merchants is part of the law of the land, of which the Court at law were bound to take notice, without its being stated.
And this requires a view of that subject, to develope its principles.. A custom of this sort, when first brought into Court, is a matter of fact, and merchants examined, to prove what it is. When legal decisions are made upon it, it becomes the law of the land; of which, all parties and Courts are to take notice, without stating it; and in this distinction, I am warranted by Lord Mansfield, when he says, [in Edie et al. v. East India Co. 2 Burr. 1222,] “ he was wrong in having permitted merchants to give evidence of a custom on which there had been such legal decisions.”
Then, how does this apply to the present casa ? Had there been any such legal decision prior to 1791 ? I have *138 heal'd of none; and the Court of Law, then, appears not to have known of any, or to have disregarded it. This Court have since decided in favor of the custom, and I suppose the law settled. But, we are to consider how it stood in 1791.
The custom, then, was not stated to the Court of Law, nor were they bound to take notice of it; but it is before the Court of Equity. Besides that of the parties being unheard, there are auxiliary circumstances in equity, such as the absence of the creditors; that Ozborne made a fair and honest payment; that Briggs had the control over the bond, and might have levied an execution, if the debt had not been paid; and that the creditors, upon their return, applied to the attorney, and not to Ozborne; thereby strongly implying his power to receive the money: None of which, though they have some weight, appear in the ease at law.* In short, the plaintiff makes and proves a new case in this Court, clearly shewing him entitled to relief; which the Court can afford him, and will not deny, or delay justice, by sending him somewhere else to seek it; especially as, in his present condition, he must obtain it here or no where.
Mr. Wickham, indeed, would start this man in a new race for relief: He may apply to the Court of Appeals for a supersedeas to the judgment at law: he does so, and the release of errors is in his way; upon which, he is to apply to the Chancellor for an injunction not to use the release of errors. This, the Chancellor might grant or not: but suppose that done, would or could the Chancellor oblige the Court of Appeals to grant the supersedeas to bring the case before them against a positive law, the time for granting it being elapsed.
This bandying of suitors for justice, from Court to Court, may answer some purposes, which, however, I am sure the gentleman had not in view, but will not produce speedy and substantial justice, the legitimate end of all Courts, and which requires that the decree in the present instance should be reversed, and a perpetual injunction awarded.
And I agree with the Judge near me, that such be the decree of the Court, with this addition, that it shall provide for the re-payment of the money, if paid under the dissolution of the former injunction.
*139 Decree reversed, with costs both in this Court, in the Court of Chancery, and the Courts of Law; with a direction, that if the money has been paid in consequence of the dissolution of the injunction, that there should be a decree for re-payment, &c. *

[* Hudson v. Johnson, 1 Wash. 10, April, T. 1791.

[* Orders of Lord Ch. Bacon, Beames' Or. Ch. 11; Beames' Pleas in Equity, 147, and authorities in note 2.]

[† See Francis's Max. [5,] note (k) Settings ed.]

[* See Kenney’s exrs. v. McClure, 1 Rand. 284.]

[* If it be doubtful, whether a party can be relieved at law, Jtis a proper case fora Court of Equity. See Spotswood v. Higgenbotham, 6 Munf. 313; Weymouth v. Boyer,1 Ves.jun, 417.]

[† The jurisdiction of the Court, as to injunctions, is a most useful one; without which the benefit of an equity against proceedings, at law cannot be had. Per Ld. Hardwicke, in 2 Ves. sen, [20,]

[* Natural justice is the rule in Chancery, and not the niceties of law Per Ed. Ch. Nottingham.

[† In Tomkies exr. v. Downman, 6 Munf. 557, & general delusion on the subject of a point of law, was suecessfully relied on, as a ground of re= lief in a Court of Equity.]

[* See the remarks of Brooke, J. Munf. 570.] in Tomkies’ exor. v. Downman, 6

[* Stanard v. Brownlow, 3 Munf. 229, similar order.]