George M. West executor of Robert West deceased, presented a Bill to the Chancellor of the Richmond District, for an Injunction to stay proceedings on a judgment at law obtained by Thomas Logwood against him, on a bond pretended to have been executed by his testator Robert West, for $2481 97, which the Complainant believed to be counterfeit; that the defendant Logwood by his answer might set forth particularly, the consideration for which the said bond was given; that a new trial of the cause might be directed, in which the complainant might be permitted to plead non est factum, and thereby put the question of fraud in issue; or that an issue on the same point might be made up, and tried at the bar of any tribunal convenient to the parties; and for general relief.
The grounds of Equity stated in the Bill, were, that, “on the trial at law, on the common plea of payment, put in by the complainant’s counsel, some circumstances transpired, which, for the first time, awoke suspicions of fraud; and then, on a minute examination of the paper, the complainant was convinced that the signature of his testator’s name thereto was not genuine;’’ that, under this conviction, after the jury had rendered a verdict for the plaintiff, he moved the Court for a new trial, which was denied, and judgment rendered according to the verdict; that, execution being forthwith sued out, the Complainant gave a forthcoming bond, with a view to gain time to make himself better acquainted with the transactions between his testator and the said Logwood, and to detect the fraud if any had been attempted by the latter; on which forthcoming bond, execution had lately been awarded: — that the plaintiff was now firmly convinced that the said bond for $2481 97 cents was not the genuine deed of his testator;—
*lst. Because the said Logwood, before the institution of his suit at law, stated to the complainant that he held such bond, and requested payment, but always declined shewing the bond, (alledging that he had it not with him,) tho’ requested to do so:—
2d. Because, when the said Logwood made application for payment, he stated expressly that the bond in question, and another which he also held against the estate of the said Robert West, were both executed on account of a debt from the said West to him, arising from a difference in exchange of lands, which assertion appeared to be incorrect; that said bond for $2481 97 cents containing internal evidence that it was given “in full of all open accounts” between the parties, with some particular specified exceptions; and the written agreement, concerning the said exchange of lands, demonstrating that the said bond could not have been given on that account.
3a. Because the said bond was attested by three witnesses, one of whom, Moses Jackson, by his affidavit (exhibited with the Bill,) denied that he ever attested it, or any other transaction between the said West and Logwood: and another, Thomas Churchman, was guilty of such gross inconsistencies in his testimony, as a witness to the other bond, (against which the present complainant had pleaded non est factum,) as to destroy all confidence in his credit; and, altho’ the Jury found that issue for the plaintiff Logwood, and the Court refused to set aside the verdict, yet the complainant had reason to believe that it was not because the Jury or the Court put any confidence in the witness, but because the bond was executed for the amount of an instalment,'which was admitted on all hands to be due on account of the exchange of lands : — ■
. 4th. Because the complainant could not find among his testator’s papers any trace' of any transaction between the said Log-wood and him, on which the said bond for $2481 97 cents could have been founded:— and 5th, because the complainant verily believed, from his knowledge of his testator’s hand writing, that his signature to the said bond was not genuine; and he, the complainant, *had no manner of pecuniary interest in this transaction, but was actuated solely by the desire of doing justice to his testator’s estate and family.'
Chancellor Taylor refused the injunction, which afterwards was granted by Judge Cabell, with the concurrence of Judge Coalter.
Logwood then answered the Bill, denying all the equity alledged, and declaring that the bond in question was genuine, being given in consideration of two thousand dollars, cash lent by him to the said Robert West, and a balance due him on sundry other transactions between them; that Moses Jackson, the witness to the said bond, was a different person from the man of the same name who denied that it was attested by him; that Thomas Churchman also actually attested the execution thereof, and was a man of a fair reputation, tho’ attempts were made on the part of the complainant to brow-beat and surprise him, whilst under his examination as a witness; in which the complainant in some degree succeeded, but not farther than is frequently the case, *821 on such occasions, with persons of undoubted veracity.
Many depositions and exhibits were filed on both sides.
Chancellor Taylor dissolved the Injunction, and afterwards refused to re-instale it; on which occasion he pronounced the following opinion.
“I shall consider this case as standing before me upon a motion to re-instate the Injunction, w’hich at the last term was dissolved without any attentive examination of the record, that it might remain under the control of the Court in vacation.”
“The first question to be settled is, how far this Court has a right to interfere under the circumstances, in this case, after a judgment at law. If this question be with the plaintiff, the merits of the case stand next in order; but if this question be in favour of the defendant, the Court (I should suppose) has no more right to look into the merits than it has to be influenced by it’s knowledge of the character of the defendant.”
“This question leads to the Bill, in which, the circumstances relied upon as sufficient for the interference of this *Court, are these; “that, on the trial, some circumstances transpired, which for the first time awoke suspicions of fraud; and then, on a minute examination of the paper, your Orator was convinced that the signature of his testator’s name thereto was not genuine; that, under this conviction, after the Jury had rendered a verdict for the plaintiff, he moved the Court for a new trial of that cause, and a continuance of the other: — the continuance was granted, but the new trial was denied, and judgment rendered according to the verdict; that, an execution being forthwith sued out, your Orator gave a forthcoming bond, with a view to gain time to make himself better acquainted with the transactions between the testator and the said Logwood, and to detect the fraud if any had been attempted by the latter: — on this forthcoming bond, also, execution has lately been awarded.”
“These circumstances are to be considered as if so much of the Bill stood upon a demurrer: for I understand it to be the law of this Court, as well as the law of this land, that, if a party has a plain and adequate remedy at law, he shall not be relieved in this Court, Vide 1st and 2d. ch. of the text of Mr. I'onblanque, and his very able commentaries thereupon. And, upon the authority of this rule, it follows that a party that might defend himself at law, shall not come here for relief; unless, from circumstances which he could not reasonably control, he was unable to do it at law. Vide the same authorities. In other words, as the correctness of these rules will not be questioned, so long as the trial by Jury shall be preferred, it may safely be affirmed to be the law, that every controversy which can be fairly and fully settled there by reasonable attention, shall not be reviewed or settled here; and more especially, in a case where all the means for delay afforded by the law, have been resorted to in the first Instance. Vide the same authorities.”
“Let the case before us, then, be examined by this rule. Could it have been fairly and fully settled at law? The answer is at hand; that it might, unless from circumstances *which the plaintiff here could not have reasonably controlled there. What were these circumstances? Why, besides those before stated, it is also alledged in the Bill that the plaintiff was not acquainted with the affairs of his testator, and therefore had no reason to doubt the fairness of the claim, and went to trial upon the common plea of payment, put in by his counsel. But, if the plaintiff had taken oyer of the bond, on which he was sued at law, which was right if not his duty, he would not have been bound to plead until the bond had been filed: — -so that he might very easily have controlled those circumstances which led to that plea, and might easily have been prepared for trial, upon the -plea of non est factum : — therefore it is not competent for him to complain, since the injury of which he complains was produced by his own want of reasonable attention.”
“But, if it be not so, then, according to his own shewing, he was apprised of the supposed fraud in relation to the name of his testator, in due time, and might have availed himself by a proper defence, at law, in the motion for a new trial, which was made and denied. He was then in the proper Court, with the legal means in his hands. It was competent to that Court, upon his own affidavit, disclosing sufficient circumstances, to give him the relief now asked for:- — but this Court is asked now to do what that Court might have done. That Court was right, or it was wrong. If it was right, there is an end of the question ; and, if it was wrong, the question should have been saved and reviewed upon the law side of the Supreme Court; for this Court has no right to revise the errors of a Court of law.”
“These arc believed to be plain and correct principles; and if they need any support, it may be found in those cases referred to in 4 Munf. 135, by a written argument, by Mr. Botts, in support of a petition to the Supreme Court of Appeals, in the case of Spencer and White v. Wilson, for an appeal from a decree of this Court.” ^'Besides, the principle seems to be settled, in Hook v. Nanm* and others, 4 H. & M. 157, that, if a Court refuse a continuance at law that ought to be granted, the question may be saved and the error corrected by an appellate Court, as was done in that case; and this being the law with respect to a continuance, when refused, the same rule is supposed to apply to a motion for a new trial, if it be also refused: • — and in Syme and others v. Montague, ibid. 180, I understand the principle in Hook v. Nanny and others, to be applied so expressly: — for my venerable predecessor in that case said, “that if the Court before which the verdict was found, in the action at common law, and in rejecting a motion for a continuance, the Court of Chancery for that reason awarding a new trial would, usurp jurisdiction impertinently;” and “that if the verdict were contrary to evidence, or were found upon insufficient evidence, application, which ought to have been to the Court where the trial was had, *822 was with like impropriety addressed to the Court of Chancery for such other trial;” and Judge Tucker concurred with him ; and Judge Fleming, who was the other Judge that then composed the Supreme Court, (as Judge Eoanedeclined to sit in the case,) said, “that the reasons of the Chancellor for not meddling with the trial, and judgment at law, are cogent and satisfactory.” And I am humbly of opinion, that if this be the law for Mr. Hook and Mr. Montague, it should also be the law for Mr. I/og-wood, and for all others standing in a like situation. ”
“It never was, I believe, as represented in Mr. Botts’s argument, 1 ‘that the Country has groaned of late under the harsh and highly penal rule of the Chancery Court:” but, if it were so, as that argument was addressed to the Supreme Court, from whence the rule complained of was derived, as appears in Judge Roane’s opinion in Branch v. Burnley, 1 Call 147, and by the case of Terrel v. Dick, ibid. 546, I shall make no remark upon it: for I feel very confident that the rule, if pursued, like the rule in this Court, “never to refuse to hear a motion (within the rule *of Court,) to dissolve an Injunction,” would have the like good effect upon the Country.”
“The value of this Rule is derived from it’s inflexible character: it is known; it is fixed; and never yields to time or circum*-stances; and I hazard nothing when I say there is not a lawyer at the bar, that would, if consulted, give his consent to part from it. Let the Rule, then, with respect to relief in Chancery, after a judgment at law, be as well fixed, as the rule is with respect to motions to dissolve, and it will be as valuable. The reason of the rule, in relation to such motions, is this, that, as the Court is always open to re-instate an Injunction, if dissolved, so the Court, when sitting, should never, within it’s rule, refuse a motion ,to dissolve. The good effect of the rule, is seen in the promptitude of the parties, who, as it never varies, always understand it. The justice of the Country requires that the rule, by which a party shall be let into this Court for relief against a judgment at law, should also be as well known and fixed; and that it should not bend tó time or circumstances; unless they were not reasonably to be controlled. The reason of it, to my mind, is obvious; since it is a legal, and not an equitable right the plaintiff comes here to assert.”
“Allow me to say, that rules prescribed by Courts, like those prescribed by the Legislature, should neither conflict with the Constitution, nor with the reasonable convenience of the people.”
“As to the former, it is declared by the 11th section of the bill of rights, that, “in controversies respecting property, in suits between man and man, the ancient trial by Jury is preferable to any other, and ought to be held sacred.” Perhaps it may be said, that this section of the bill of rights is not to be infringed; because, if the new trial be granted, the case is to be tried by a Jury again: but the section is not worth reading, if this Court can set the verdict already found aside, which the Court, where it was found, (for aught that appears, for the same reasons,) refused.”
*“As to the latter, look at the record, and let the inconvenience and trouble, as well as the expences of the parties, be contrasted with their inconvenience, trouble and expences in going to the dernier resort of the law, for a new trial. In the former case, it is really not a very easy matter to make an estimate; without saying a word as to the effects of the written evidence upon the verdict found under circumstances which satisfied a most intelligent and enligthened Court. In the latter case, if that Court erred, a bill of exceptions, (as in Hook v. Nanny and others,) transmitted to the Supreme Court, with the aid of Counsel, put an end at once to all the trouble and expence of the parties, and held “sacred” the verdict, unless by law it should be set aside; and then by law the same cause would be tried again. Surely this is the better course, and one which, with great deference to the opinions of others, I think ought to be pursued, or the decision of the Court of law, as in Syme and others v. Montague, ought to be satisfactory; unless the broad ground is to be taken that this Court is not to be satisfied without reviewing every case in it’s own way, regardless of the rules of law; against which unauthorised ‘assumption of power, I avail myself of this occasion to enter my solemn protest.”
“I have regretted very much to hear some Gentlemen of the Bar say, that they consider the line, as drawn by the case of Terrel v. Dick, between the Courts of law and equity, and supported by one uniform course of decision, in the cases of Turpin administrator of James v. Thomas, 2 H. & M. 139, Syme and others v. Montague, 4 H. & M. 180, Delima v. Glassel’s administrator, ibid. 369, Kincaid v. Cunningham, 2 Munf. 1, The Auditor v. Nicholas, ibid. 31, Fenwick v. M’Murdo & Fisher, ibid. 244, and Duvals v. Ross, ibid. 290, removed by the decision in the case of Price’s executor v. Fuqua’s administrator, 4 Munf. 68, and thé cases which' have followed since. — :These cases shall in due time receive my attention. In the case of Fenwick v. M’Murdo & Fisher, the President, of the Supreme Court, adverting to the cases of Terrel v. Dick, Turpin administrator of James v. Thomas, *Morris & Overton v. Ross, Syme and others v. Montague, and Delima v. Glassel’s administrator, said, “the principle settled on solemn argument and due consideration of those cases, ought not now to be disturbed; which is that, where a cause has been once fully heard and decided in a Court of common law having competent jurisdiction of the case, a Court of Equity ought not to interfere, unless fraud or surprise be suggested and proved, or some material adventitious circumstance had arisen which could not have been foreseen or guarded against. The case before us was most properly cognizable in a Court of common law, where it seems to have been thoroughly investigated, and underwent an able and lengthy discussion in all it’s parts, and a verdict and judgment was *823 rendered in favour of the plaintiff, to which there was no exception taken, nor was there a motion for a new trial. The •Court, without deciding on it’s merits, is unanimously of opinion that the Court of Chancery had no jurisdiction of the case.”
“There is no difference discerned, between the principle settled, upon a review of those cases, in that Court, and that laid down, by this Court, in Alderson v. Biggers & others, 4 H. & M. 470, and in Nicholson and Heth v. Hencock and others, ibid. 491, and which I still think is correct, and that it ought to give the rule in the case before me.”
“Bet us now turn our attention to the case of Price’s executor v. Fuqua’s administrator, 4 Munf. 68, and to the decisions in the other cases since, to see if those Gentlemen, to whom I have referred, were correct in supposing the decision in Terrel v. Dick, (recognised by the cases referred to,) overruled. The principal cases, since Price’s executor v. Fuqua’s administrator, in which the question of jurisdiction was presented, are Wall’s executor v. Gressom's distributees, 4 Munf. 110, Spencer and White v. Wilson, ibid. 130, Noland v. Cromwell, ibid. 155, and Wilkins v. Woodfin administrator of Pearce, 5 Munf. 183: — and, first, as to the case of Price’s executor v. Fuqua’s administrator.”
'’“‘This was a decision in the absence of the appellee ; and therefore, as I understand the course of the Court, it would not be considered as authority there: it should not be considered so elsewhere; or, in other words, it gives the rule only in that particular case.”
“In the next case, of Wall’s executor v. Gressom’s distributees, I understand Judge Soane in delivering the opinion of the Court, as I do in Terrel v. Dick; and the decision being founded upon “the circumstances of the case,” confines it’s authority, I believe, to that case only.”
“In the next case of Spencer & White v. Wilson, it does seem to me, I admit, that the decision conflicts with the rule in Terrel v. Dick, and in the cases which followed, down to the decision in the case of Duvals v. Ross. — 'The conflict seems to be in this, that, in these cases, the plaintiffs in this Court were denied relief in the Supreme Court, upon the ground taken by Judge Soane in Branch v. Burnley, and by the Court in Terrel v. Dick. In Branch v. Burnley, that very distinguished Judge said, “I hold it to be a clearly established principle that a judgment of a Court of common law, given on a legal question shall never be corrected or disturbed in Equity upon grounds which were proper for the common law Courts, and which, therefore, we must suppose such Court to have decided upon; unless the applicant to the Court of Equity can shew some particular circumstances to have taken place, operating as an impediment to his availing himself of those grounds upon the trial at law.”
“In Terrel v. Dick, Judge Roane, on a like question, again said, “in order to save time, I beg leave to refer, in support of this opinion, to the observations I used upon this point, in the case of Branch v. Burnley, and to remark that, upon mature reflection, since, I have not seen cause to change my opinion upon the subject.”
In the case of the Auditor v. Nicholas, Judge Brooke said, upon a like point, that, “the doctrine is well established in this Court, that decisions at law can not be revised in a Court of Chancery upon the mere ground of error in the law Court, nor upon circumstances *of which that Court had cognizance, unless the complainant can make a competent excuse for having failed to defend himself at law.”
“In the case of Duvals v. Ross, upon a like point, Judge Cabell said, “1 can not perceive in this case any ground on which Ross can found his claim to the interference of a Court of Equity. The controversy between the parties, a mere contest about the terms of a contract, was properly cognizable before a Court of law. It was regularly submitted to a Jury, who fully investigated and fairly decided it. Ross himself complains neither of surprise, of the absence of witnesses, nor of any other circumstance to impeach the fairness of the trial: he does not state the subsequent discovery of testimony unknown to him at the trial; and, altho’ he calls on the Duvals to answer as to certain facts which he al-ledgcs were known to them, yet he no where intimates that these facts were known to them only, so as to be incapable of other proof, and thus to authorise a resort to a Courty of Equity for the purpose of extorting a disclosure. In fact, the only ground on which he himself sets the subject is, that the judgment is oppressive and unjust. What is this but, under the specious pretext of equity and justice, to give to the Court of Chancery the enormous powers of revising and controlling verdicts and judgments in all cases whatsoever? a power dangerous in itself, incompatible with the genius of our government, and utterly denied by our laws.”
“In this case, also, Judge Fleming said, that “all the facts and circumstances stated in the Bill were, or might have been, given in evidence on the trial at law;” so that four Judges, in five, concurred with this Court in Fenwick v. M’Murdo and Fisher. ”
“But, in the case of Spencer and White v. Wilson, now the subject of consideration, relief was afforded, tho’ no reason was assigned in the bill for not having made their defence at law, as seems to me to be required by all of the foregoing opinions; and without a proper case being made by the bill for a discovery, as was said by Judge *Cabell, in Duvals v. Eoss, to be necessary; and still it does seem to me that the Court did not mean to be understood, in that case, as conflicting with the quesiion of jurisdiction, settled in Terrel v. Dick, and in the numerous oases which have followed. . For, in the next case of Noland v. Cromwell, Judge Fleming said, in giving the opinion of the Court, in which, also, he said that Judge Roane, tho’ absent, concurred, that “altho’ a party may be let into a Court of Equity, on grounds which he could not have used on the trial of a Caveat, and which, in fact, make another case, (in reference *824 to that which he might have availed himself of on such trial;) or upon a case suggesting and proving that he was prevented by fraud or accident from prosecuting his caveat; he is not to be sustained in the Court of Equity, on such grounds as were, or might have been brought forward on the trial of the caveat.” So that I consider the rule established by this decision as a complete recognition of the rule, upon the principle laid down in the case of Fenwick v. M’Murdo and Fisher, and in all those cases referred to in that decision: for I am unable to discern the difference it any exists; since, in both cases, whether at law upon a bond or covenant, or in a caveat, the party coming here for relief against a decision there, must, upon principles, be abie to state, and to prove, why he did not avail himself at law; and so; as to a decision at law in any other action, from a common action of slander up to a Writ of right. And if, as Judge Brooke said in the case of the Auditor v. Nicholas, he “can m,ake a competent excuse for having failed” to do it, this Court will sustain him. And in Noland v. Cromwell, Judge Fleming, as to Jurisdiction, remarked that, “if the solemn decisions of this Court upon the point, were even replete with error, that error, upon general principles, had better be acquiesced in, than corrected at this late day:” and tó this effect the same venerable Judge spoke in the case of Fenwick v. M’Murdo and. Fisher: and herewith also agrees that distinguished author Judge Blackstone, that “it is an established rule to abide by former precedents where the same *points again come in litigation ; as well to keep the scale of justice even and steady, and not liable to waiver with every new Judge’s opinion ; as also because, the law in that case being solemnly declared and determined, what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or vary from, according to his private sentiments: he being sworn to determine, not according to his own private judgment, but according to thé laws and customs of the land; not delegated to pronounce a new law, but to maintain and expound the old one.” And so are the principles on which this Court acts, as well settled. Vide the case of Bond v. Hopkins, 1 Sch. and Lefr. 428-9, for the opinion of Lord Reddesdale in this respect.”
“The same distinguished author, speaking of the dernier resort of Justice in England, says, ‘ ‘their sentence is final, decisive, irrevocable: no appeal, no correction, not even a review can be had: and to their determination, whatever it be, the inferior Courts of Justice must conform; otherwise the rule of property would be no longer uniform and steady.” 1 Tuck. Bl. 11, 69. — -And so here:'for, unless it be so, a dernier resort of justice would be a very great evil, instead of a benefit to the community. So that i1 is the duty of this Court, in conformity with the established law, so far as the decisions of the Supreme Court are understood, to pursue them.”
“The only difficulty, at any time, upon this subject, so far as X am informed, is to | understand how the law there is settled. That this difficulty should sometimes exist, is not very strange; since a difference of opinion now and then happens, among the Judges of that Court, in relation thereto. But so far as the law is understood to be settled, I believe, it is conformed to by all the Courts below with peculiar pleasure. But if it be not settled at all, the settlement of it must, from the nature of our institutions, begin in the Courts below; and, in such cases, each Judge must, of necessity, do it in his own way: — and so he must, if there be a contrariety of decisions *in analogous cases; or if the law be settled, as Judge Fleming said in Duvals v. Ross, “according toa variety of decisions of this Court,” each Judge must still act for himself in like manner.”
“The next and last case referred to, of Wilkins v. Woodfin adm’r. of Pearce, may be considered as placed upon the ground of Price’s ex’or. v. Fuqua’s adm’r., as it was a case without counsel for the appellee.”
.“There are some other cases, since the case of Price’s executor v. Fuqua’s administrator, that bear a strong likeness to it‘, which have not been brought into view, and as to which, I do believe, so far as I understand them also, the Judges of the Supreme Court did not mean to remove- the line, as drawn by the many solemn decisions of that Court, between the Courts of law and equity, from Terrel v. Dick down to Noland v..Cromwell: for, in none of the cases that are supposed to conflict with that line, has it been said by a single Judge of that Court, that any one of them is not law, as is sometimes said in England, Vide 1 Tuck. B1. 69.”
“One general remark more, upon all that class of cases, which are said to conflict with Judge Roane’s opinion in Branch v. Burnley, and with the Court in Terrel v. Dick, and with all the other caess decided in conformity thereto, down to Noland v. Cromwell, is this, that in not a single instance did the question occur as to the jurisdiction of the Court; and, in every instance, the Court seems to have relied upon the merits, without even looking at that question; so that I consider it as in no-manner disturbed; and in this I am supported, upon principle, by the decision of the Court in Noland v. Cromwell.”
‘ ‘If in this view of the subject I am correct, this Court was so in Alderson v. Biggers, 4 H. & M. 470, and in Nicholson and Heth v. Hencock and others, ibid. 491, which, being now reviewed, are approved and referred to, so far as the question of jurisdiction was discussed and settled, as a part of my opinion in this case.”
“But, if I have erred in this view, then it is for the Supreme Court to say whether the line drawn between the Courts of law and equity by the decision in Terrel v. Dick, and approved by the Court in Fenwick v. M’Murdo, ⅞ Fisher, upon a review of all the like cases which had been decided in the mean time, be removed or not.”
“Before I dismiss this subject, let me notice the conduct of Mr. West. On the trial at law he suspect%d, for the first time, that the name of his testator to the bond in *825 question, was not genuine: — -but, rfter a verdict, be was denied a new trial: — -why? because, I suppose, the Court was satisfied: —and with that decision this Court must be satisfied, unless he could bring himself within the rule laid down by all the Judges in some of the cases before referred to. What did he do? Why, instead of coming off to this Court, to state and prove if it were true, how he had not been able, from some reasonable cause, to present his case to the Court of law for a new trial, and therefore asked it here, before an execution should be levied, to save expences to the estate of his testator, he submitted to an execution, a forthcoming bond, and a judgment thereon; and, thus, having availed himself of all the delays of the law, comes here, representing this conduct as necessary “to gain time to make himself better acquainted with the transactions between his testator and the said Logwood;” and yet, he does not state, in any part of his bill before me, the discovery of a single circumstance, in relation to the transaction, since that trial, so far as I understand that bill. He is not therefore, as it seems to me, within the rule prescribed to this Court; since the circumstances now disclosed were known to him then, and were either brought to the view of the Court of law, or they might have been: — and, upon authority, if they were not, it should be accounted for.”
“Upon this view of the subject, I can not consent to reinstate the injunction, which is now to be considered as having been dissolved upon the ground that it should not have been granted.”
From this decree the complainant was allowed an appeal by order of a Judge of this Court. In his petition he remarked, 1st, that his case, as stated in his bill, was properly relievable in equity; since, if he might have made the matters, in the bill stated, the ground of a defence *at law, (and it is not denied that he might,] the reasons set forth by him for not having availed himself of such de-fence at law, are sufficient in themselves, and are proved to be just and true, by the proofs in the cause and all the circumstances of the transaction: — -2d, that, on the merits and on the evidence, the case was precisely such an one, as that the Court should have directed a new trial of the suit at law, with liberty to the complainant to plead that the bond was not the deed of his testator.
The following was the opinion of this Court.
The Court is of opinion, that the Court of Chancery erred in dissolving the Injunction in this case, without having directed an issue, to try whether the bill penal in question was the deed of Robert West the appellant’s testator, or not; and further, to ascertain, if it be found to be bis deed, what was the consideration on which it was founded.
The Decree is therefore reversed with costs, and the cause is remanded to the Court of Chancery, to have such issue directed, and the cause proceeded in to a final decree.