# 𝔚heeling.

### RILEY YOAKUM *vs.* ROBERT J. TILDEN *et al.*

#### January Term, 1869.

1. The payment of a judgment or decree to the attorney of record who obtained it, before his authority is revoked, and due notice of such revocation given to the defendant, is valid and binding on the plaintiff, so far, at least, as the defendant is concerned.

2. On a motion to quash a writ of *fieri facias* on the ground that it had been previously paid to the attorney of record of the plaintiff, it devolves on the plaintiff to show the revocation of the authority of the attorney to receive the money, before it was paid to him, and that the defendant had notice of such revocation, before the defendant can be compelled to pay it over again.

At the May term, 1867, of the circuit court of Hardy county, Robert J. Tilden, late sheriff of said county and committed administrator of Michael Yoakum, deceased, and others, his sureties, filed their motion to quash an execution issued against them by Riley Yoakum from the clerk's office of said court, on the 30th day of April, 1867. From the notice it appears the execution was founded on a decree rendered by said circuit court some ten years before in a suit in equity, in which Alfred Yoakum was complainant, and his brother, the said Riley Yoakum, the said Tilden, sheriff of Hardy county, as administrator of Michael Yoakum, deceased, and his sureties, were defendants. The object of the suit in equity was to settle the accounts of said Tilden as administrator, and to recover the amounts respectively coming to the said Alfred and Riley, sons and legatees of said Michael, deceased. The record in said chancery suit showed that William Seymour, then a practicing attorney in said court and a resident of Hardy county, appeared and acted as counsel for both Alfred and Riley Yoakum, and procured decrees for the amount due to each of them from their father's estate; for the said Alfred a de-

cree for the sum of 2,245 dollars and 29 cents with interest and costs, and for the said Riley a decree for 3,904 dollars and 50 cents with interest. For the latter sum a writ of *fieri facias* against Tilden and his sureties was issued from the clerk's office of said court, dated 29th of September, 1858, which, on account of its being against the sheriff as administrator and his sureties, was placed in the hands of the coroner of Hardy county for collection. The return made on the writ of *fieri facias* and the evidence taken in the cause showed that the sum of 1,317 dollars and 1 cent was paid on the execution to the coroner and the residue to said Seymour as attorney for Riley Yoakum. The writ had been duly levied before the return was made on it on the property of the defendants, or some of them, sufficient to satisfy the same. It also appeared that no part of the money received by Seymour had ever been paid to the said Riley Yoakum, and that said Seymour departed this life in 1860, and it was suggested (although it does not appear on the record) that his estate was insolvent. The grounds upon which the motion to quash was founded were that the original execution, issued in September, 1858, had been fully satisfied by the aforesaid payments made to the coroner J. W. Duffy, and to the said William Seymour, attorney for Riley Yoakum. The return of the coroner on the writ showed the payment of the 1,317 dollars and 1 cent to him, and the receipts of Seymour, and his endorsements on the writ, were introduced as evidence to show the payment of the residue to him. The circuit court of Hardy county, at the May term, 1867, sustained the motion to quash, and Riley Yoakum excepted to the opinion of the court sustaining the motion, and the cause came up to this court on a writ of supersedeas.

*Sprigg* and *Parker* for plaintiff in error.
*J. J. Jacob* and *Edmiston* for defendants in error.

BERKSHIRE, J. The judgment complained of is founded on a motion to quash a certain writ of *fieri facias*, in favor

of the plaintiff in error against the defendants in error,
which issued from the clerk's office of the circuit court of
Hardy county, at the instance of the plaintiff in error.
This execution was founded on a decree rendered in said
court some ten years previous, in a suit in equity, in which
Alfred Yoakum was complainant, and his brother, the said
Riley Yoakum, the sheriff of Hardy county, as administra-
tor of their deceased father and his sureties were defendants.

It appears, from the record, that the suit in which this
decree was rendered was brought by the said Alfred Yoa-
kum for the purpose of settling the accounts of the admin-
istrator and recovering the amounts respectively coming to
him and the said Riley Yoakum as legatees under their
father's will.    It further appears that William Seymour,
then a practicing attorney in said court and a resident of
Hardy county, appeared and acted as counsel for both Al-
fred and Riley Yoakum, and procured decrees for the
amounts due to each of them from their father's estate; for
the former the sum of 2,245 dollars and 29 cents with in-
terest and costs, and for the latter the sum of 3,904 dollars
and 50 cents with interest.    That for the latter sum a writ
of *fieri facias* issued from the clerk's office of the said court,
dated the 29th of September, 1858, which, on account of
its being against the sheriff as such administrator and his
sureties, was placed in the hands of the coroner of Hardy
county for collection.

It also further appears, from the returns made on said
writ and other evidence taken in the cause, that the sum of
1,317 dollars and 1 cent was paid on the execution to the
coroner, and the residue to the said Seymour, as attorney
for Riley Yoakum.    And the coroner made return ac-
cordingly, that the amount so received by him, after de-
ducting costs, &c., was in his hands ready to render, and
that the residue of the execution had been paid to the said
Seymour as the attorney of the plaintiff in error.    And it
also appears that this execution was duly levied by the cor-
oner, before he made the return on it, on the property of
the defendants in the execution or of some of them, sufficient

or more than sufficient to satisfy the same.    It further appears that the plaintiff in error at the time of, and for many years anterior to the institution of said suit was a non-resident of the State of Virginia, residing in the West, where he has continued to reside ever since, and had not from the time first named until recently been in said county; whither he came for the purpose, as he alleged, of inquiring into and collecting the money so due from his father's estate. It moreover appears that no part of the money so received by Seymour has ever been paid over to the plaintiff in error, and that the said Seymour departed this life, perhaps in 1860, and it is now *suggested* (though it does not appear on the record) that his estate is insolvent.   From the foregoing it will be seen that the only question presented for our consideration and judgment is, whether under the facts disclosed in the record the payments so made to Seymour by the debtors in this execution were valid and exonerated them from further liability.   It was earnestly insisted in the argument here that they were made without proper authority and ought not to be sustained.   That the defendants by assuming the responsibility of paying to Seymour without first ascertaining his authority to receive the money, ought to bear the loss, if any, instead of letting it fall on the plaintiff in error.   And it was further insisted that the burden of proof to establish the authority of Seymour in the premises, as in the case of an agency, devolved on the defendants and not on the plaintiffs.

I do not think the authorities sustain these positions.   On the contrary they not only indicate a marked distinction in many respects between the *status* of an ordinary agent and that of a licensed attorney at law, but very clearly establish the doctrine that, the payment of a judgment or decree to the attorney *of record who obtained it,* before his authority is revoked, and *due notice* of such revocation given to the defendant, is valid and binding on the *plaintiff,* so far at least as the *defendant* is concerned.   2 Greenleaf, sec. 518, and cases there cited in note.    6 Johns., 295; 7 Leigh, 277; 1 Wash., 10; 1 Call, 147.

But if the authorities on this point were less full and conclusive than I think they are, yet, under the peculiar circumstances of this case, considering especially the lapse of time and the death of Seymour, I should still be of opinion that the suggestion merely of the want of authority in said Seymour to collect and receive the money, would not of *itself* be sufficient to fix the liability of the defendants in error (who it must be admitted are equally innocent as the plaintiff in error), and that it therefore devolves on the plaintiff in error to *disprove* such authority before he could compel the defendants to pay the money over again. This he has wholly failed to do, and I think, therefore, that the judgment must be affirmed, with costs and damages.

The other judges concurred.

JUDGMENT AFFIRMED.